ENTERED
LODGED _____ RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OCT 3 0 2014

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Civil No. **PJM 12-3065** |
| | * | Crim. No. **PJM 03-0457-1** |
| KENNETH JAMAL LIGHTY | * | |
| | * | |
| Petitioner-Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Civil No. **PJM 11-3563** |
| | * | Crim. No. **PJM 03-0457-3** |
| JAMES EVERETT FLOOD, III | * | |
| | * | |
| Petitioner-Defendant. | * | |

## MEMORANDUM OPINION

Kenneth Jamal Lighty and James Everett Flood, III have filed a Joint Motion for Discovery Regarding the Allegations of Impermissible Discrimination in Jury Selection made in conjunction with their Motions for Relief Under 28 U.S.C. § 2255 (Paper No. 453). For the reasons that follow, the Court **DENIES** the Joint Motion for Discovery.

### I.      Procedural Background

A federal grand jury indicted Lighty and Flood (and co-defendant Lorenzo Wilson) on five counts: one of kidnapping, aiding and abetting; one of conspiracy to kidnap, aiding and abetting; and three of use of a handgun during a crime of violence, aiding and abetting. The Government filed a notice of intent to seek the death penalty with respect to Lighty only. Lighty and Flood were tried together, and a petit jury found them guilty on all counts.

At the close of Lighty's penalty phase, which began a few weeks later, the jury returned a death penalty verdict.

The Court thereafter sentenced Lighty to death on the kidnapping resulting in death conviction, to life imprisonment on the conspiracy to kidnap, and to three consecutive sentences totaling 55 years on the firearms convictions. *See* Judgment and Order, Paper No. 248 (Mar. 10, 2006); Judgment and Commitment Order, Paper No. 249 (Mar. 10, 2006). Flood received life imprisonment and consecutive sentences of ten years, twenty-five years, twenty-five years, and five years on the same respective counts. *See* Judgment and Commitment Order, Paper No. 234 (January 13, 2006).

The Fourth Circuit confirmed the convictions and sentences of both Petitioners on appeal. *See United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010). The Supreme Court denied the petitions of both for *writs of certiorari. See Lighty v. United States*, 132 S. Ct. 451 (2011); *Flood v. United States*, 131 S. Ct. 846 (2010).

In their Motions to Vacate, Set Aside, or Correct Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 (Paper Nos. 434 and 396), Lighty and Flood allege, among other things, that the Government used its peremptory strikes at trial in a discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) and *J.E.B.. v. Alabama*, 511 U.S. 127, 128-29 (1994).

Because both Motions raised *Batson-J.E.B.* claims, the Court determined that it would consider the claims together, separately from Lighty and Flood's other claims. *See* Letter Order, October 23, 2012, Paper No. 436. As a lead-in to their Motions, the Court granted Lighty's Consent Motion for Access to Juror Strike Lists (Paper No. 446), and counsel for both Petitioners and the Government reviewed those lists in chambers. After the parties reviewed the Strike Lists, they submitted a schedule for further briefing. In its Order setting a Scheduling Order (Paper No. 449), the Court permitted Lighty to file an Amended Motion to Vacate and a

Motion for Discovery as to the *Batson-J.E.B.* Claims, and permitted Flood to join in the Motion

for Discovery.

The Court's briefing schedule indicated that the issue of discovery with respect to the

*Batson-J.E.B.* claims would be briefed and decided first. Lighty then filed an Amended Motion

to Vacate (Paper No. 451) and Flood filed a Motion to Amend, seeking to adopt the pleadings of

Lighty's Amended Motion to Vacate (Paper No. 455), which the Court granted on May 30, 2013

(Dkt No. 476). On the same day, Lighty and Flood filed the Joint Motion for Discovery

Regarding the Allegations of Impermissible Discrimination in Jury Selection (Paper No 453), the

pleading presently before the Court.

The Court held a hearing on the Joint Motion and ordered supplemental briefing. Lighty

and Flood filed a supplemental brief; the Government filed none.  The Court held a second

hearing on the Joint Motion, then took the matter under advisement. Following the second

hearing, Lighty and Flood submitted an additional brief (Paper No. 501); again the Government

filed none.

The Court now considers the narrow issue of whether Lighty and Flood may conduct

discovery on their *Batson-J.E.B.* claims. It denies their request to do so.

II.        Arguments of the Parties

For the first time, on collateral review, Lighty and Flood argue that the Government

exercised its peremptory strikes in a discriminatory manner in violation of *Batson*, 476 U.S. at

89, where the Supreme Court held that litigants may not use peremptory challenges "solely on

account of race," a holding extended to gender-based challenges in *J.E.B.*, 511 U.S. at 128-29.

Lighty makes his *Batson-J.E.B.* claim as a direct denial of his "rights to due process, a fair trial, a

fair and impartial jury and to be free from cruel and unusual punishment," and of his equal

protection rights, as well as through two ineffective assistance of counsel claims against both trial and appellate counsel. Flood raises the claim as one of ineffective assistance of counsel based on trial counsel's failure to raise the *Batson-J.E.B.* challenge. Both Petitioners seek discovery from the Government to support their claims.

They argue that the Government exercised a disproportionate number of peremptory strikes against women (and African-American women), citing the Government's order of its strikes of women and its history of striking women from juries in capital cases, as evidenced by at least one earlier case, *U.S. v. Higgs*, 711 F. Supp. 2d 479 (D. Md. 2010). This evidence, according to Petitioners, establishes a prima facie case of juror discrimination, which they submit amounts to "good cause" entitling them to discovery under the Rules Governing Section 2255 Proceedings. They further argue that since the Government's initial response to their Motion for Discovery[1] contained an Affidavit giving purported neutral reasons for the strikes, the Court is now in Step 3 of the traditional *Batson* inquiry, and Lighty and Flood are entitled to discovery to satisfy their burden of showing that the Government's reasons were pretextual. Since they contend that the Government's reasons were in fact pretextual, Petitioners submit that they are entitled to appropriate discovery to the end of proving this.

The Government submits that Lighty's direct *Batson-J.E.B.* claim is procedurally defaulted and that the ineffective assistance of counsel claims of both Lighty and Flood fail because they have not established that counsel's actions fell below an objective standard of reasonableness or that either Petitioner suffered prejudice. Apart from procedural default, the Government says Lighty and Flood are not entitled to discovery on collateral review because their requests amount to nothing more than a fishing expedition. Petitioners, says the

---

[1] The Government's Response was in fact an "Omnibus Response" to the *Batson/J.E.B.* claims, addressing both discovery and merits arguments, but for purposes of the present Motion, the Court considers the Response only insofar as the discovery issue is concerned.

Government, are not entitled to more discovery on collateral review than they would have been if they had raised the *Batson-J.E.B.* claims at trial, and yet that is what they are seeking.

To overcome procedural default, Lighty and Flood argue that their counsels' failure to raise the *Batson-J.E.B.* challenge at the time of trial and on appeal constituted ineffective assistance of counsel sufficient to establish cause. They further argue that prejudice is presumed in a *Batson* inquiry because failure to raise a *Batson-J.E.B.* challenge is a "structural error." *Vasquez v. Hillery*, 474 U.S. 254, 261 (1986). They argue that because the claims are not procedurally defaulted, and because they have established a prima facie case, they should be permitted to conduct discovery.

### III.   Discovery Sought

Although Lighty and Flood initially sought more extensive discovery, including depositions of and interrogatories to the prosecutors, they have since clarified the scope of their request (Paper No. 485). They presently seek:

(i)     the Government's notes from jury selection in this case, as well as any other materials about prospective jurors in the Government's files;

(ii)    the Government's jury selection notes and juror materials from the *Higgs* case;

(iii)   the strike lists in *Higgs* and *U.S. v. Haynes*, 98-cv-0529, the latter being another capital case tried by the same prosecutors (retained by the jury clerk);

(iv)    juror questionnaires from *Higgs* (retained by the jury clerk); and

(v)     the strike lists from four other capital cases in this district, (a) *United States v.*

(vi)    *Taylor and Moses*, 02-cr-410; (b) *United States v. Argueta*, 05-cr-393; (c) *United States v. Dinkins and Gilbert*, 06-cr-309; and (d) *United States v. Patrick Byers*, 08-cr-00056 (maintained by the jury clerk).

IV.     Legal Standard for Discovery

A "habeas petitioner . . . is not entitled to discovery as a matter of ordinary course."

*Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  The court may grant discovery under Rule 6 of the

Rules Governing § 2255 Proceedings if "good cause" is shown.  Good cause is shown if the

petitioner makes "specific allegations [that] show reason to believe that the petitioner may, if the

facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S.

at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *Quesinberry v. Taylor*, 162 F.3d

273, 279 (4th Cir. 1998) (noting that *Bracy* adopts the *Harris* standard); "'[G]ood cause' for

discovery exists when a petition for habeas corpus establishes a prima facie case for relief."

*United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004). On the other hand, a defendant may

not use discovery to go on a "fishing expedition" through the Government's files in search of

evidence to support an imagined and fanciful claim. *See United States v. Wilson*, 901 F.2d 378,

381 (4th Cir. 1990).

Once good cause has been shown, the scope and extent of discovery is left to discretion

of the district court. *Bracy*, 520 U.S. at 909.

V.     Legal Standard for *Batson-J.E.B.* Claims

To determine whether Petitioners have shown good cause necessarily involves to a

considerable extent an inquiry into the merits of the claim. Accordingly, the Court first identifies

the "essential elements" of the *Batson-J.E.B.* challenge. *See Bracy*, 520 U.S. at 904 (citing

*United States v. Armstrong*, 517 U.S. 456, 468 (1996)).

A *Batson-J.E.B.* challenge requires a three-step inquiry: (1) the court first determines

whether the defendant has made a prima facie showing that the prosecutor exercised a

peremptory challenge on the basis of—in this case—gender, (2) the prosecutor must then present

a gender-neutral explanation for striking the juror in question, and (3) the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Rice v. Collins*, 546 U.S. 333, 338 (2006).

While *Batson-J.E.B.* challenges were originally limited to discrimination claims regarding one's own race or gender, they have been expanded to allow defendants who are of a different cognizable group than the stricken jurors to establish a prima facie case. *See Powers v. Ohio*, 499 U.S. 400, 400 (1991) (holding that racial identity between the objecting defendant and the excluded jurors does not constitute a relevant precondition for a *Batson* challenge); *see also Higgs*, 711 F. Supp. 2d at 504.

*Batson-J.E.B.* provide that a defendant may satisfy his initial burden of demonstrating a prima facie case of discrimination by showing that: (1) the defendant was a member of a cognizable group, (2) the prosecution exercised peremptory challenges to remove from the venire members of defendant's gender, and (3) other relevant facts and circumstances are present that give rise to an inference of discrimination. *Batson*, 476 U.S. at 96; *J.E.B.*, 511 U.S. at 144-45. Because Lighty and Flood do not allege that members of their own gender, *i.e.* men, were improperly stricken from their jury, they must show that other relevant facts and circumstances give rise to an inference of discrimination involving women. *United States v. Joe*, 928 F.2d 99, 102 (4th Cir. 1991) (citing *Batson*, 476 U.S. at 96); *see also Higgs*, 711 F. Supp. 2d at 504.

Once a defendant has established a prima facie case, the burden shifts to the prosecutor to present a gender-neutral explanation for striking the juror in question. *Rice v. Collins*, 546 U.S. 333, 338 (2006). Although the prosecutor "must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice*, 546 U.S. at 338 (quoting

*Purkett v. Elem*, 514 U.S. 765, 767-768 (1995) (per curiam)). The court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Rice*, 546 U.S. at 338 (citing *Batson*, 476 U.S. at 98). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* (quoting *Purkett*, 514 U.S. at 768).

In *Miller-El v. Dretke*, 545 U.S. 231, 239-66 (2005) (*Miller-El II*)., the Supreme Court recognized six indicia of discrimination relevant to this determination: Where prosecutors: (1) struck a high percentage of veniremen on the basis of their being part of a cognizable group; (2) proffered reasons for striking the members of the cognizable group that applied equally to veniremen who were not members of the cognizable group; (3) repeatedly "shuffled" potential jurors when confronted with eligible veniremen who were part of the cognizable group; (4) used different scripts depending on whether the veniremen were part of the cognizable group; (5) made written notes about the veniremen being part of the cognizable group; and (6) were part of an office with a systematic policy of discrimination.

VI.   Procedural Default

The Court looks first to whether Petitioners claims are procedurally defaulted.

A.

A claim which could have been but was not made on a petitioner's direct appeal may not be raised in a § 2255 petition unless there is demonstrable cause for the petitioner's failure to raise the claim at an earlier time, and actual prejudice is shown to have resulted from the alleged error. *United States v. Frady*, 456 U.S. 152, 168-70 (1982). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the

claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). The standard for prejudice is that the alleged error that led to the issue not being raised on appeal worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error." *Frady*, 456 U.S. at 170.

Courts have divided over whether prejudice must be established for procedurally defaulted claims that, if reviewed on direct appeal, would be considered "structural" and therefore exempt from harmless error analysis. *Compare Ward v. Hinsley*, 377 F.3d 719, 726 (7th Cir. 2004) (because of concerns of comity and federalism, prejudice must be established even for structural errors) with *Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007) ("defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice");

The Supreme Court has stated that discrimination in jury selection is a structural error not subject to harmless error. *See Vasquez v. Hillery*, 474 U.S. 254, 261-263 (1986). The Fourth Circuit has "eschew[ed] harmless error analysis" of a *Batson* claim, noting several other circuits that have so held. *See United States v. Legrand*, 483 F. App'x 771, 777, n. 2 (4th Cir. 2012) (unpublished) (citing *Winston v. Boatwright*, 649 F.3d 618, 628 (7th Cir. 2011); *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005); *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998); *Ford v. Norris*, 67 F.3d 162, 170–71 (8th Cir. 1995); *United States v. Thompson*, 827 F.2d 1254, 1261 (9th Cir. 1987)).

The Fourth Circuit has likewise determined that for structural errors, prejudice may be presumed for the purpose of a *Strickland* ineffective assistance counsel claim. *See Bell v. Jarvis*, 236 F.3d 149, 165, 180 (4th Cir. 2000) (en banc).

Although Petitioners suggest that this means prejudice must be presumed for procedural default purposes, the law in that respect is not settled. In fact, the Fourth Circuit has not established "whether the showing of prejudice required to excuse procedural default is identical to the showing of prejudice required to establish ineffective assistance of counsel, namely, that 'there is a reasonable probability that, but for the [errors], the result of the proceeding would have been different.'" *Richmond v. Polk*, 375 F.3d 309, 326 n.7 (4th Cir. 2004) (citing *Burket v. Angelone*, 208 F.3d 172, 189 n.17 (4th Cir. 2000). At least one Circuit has decided that the "showings of prejudice overlap, and []resolve them simultaneously." *See, e.g., Owens*, 483 F.3d at 69 (citing *Strickler v. Greene*, 527 U.S. 263, 282 (1999) ("In this case, cause and prejudice [for procedural default] parallel two of the three components of the alleged [trial error] itself."). Further, as *Owens* notes, the concerns of comity and federalism that prevented other Circuits from holding that prejudice cannot be presumed for structural errors are not present on collateral review of a federal conviction. *Id.* at 64 n.14. For purposes of the procedural default analysis, the Court will presume prejudice without specifically deciding the issue. Accordingly, the Court focuses only on whether Petitioners have established cause.

B.

It is clear that Petitioners have procedurally defaulted any direct *Batson-J.E.B.* claim because they failed to raise it at trial or on appeal.  But in support of their procedural default argument, Petitioners allege that ineffective assistance of counsel at trial is the cause that accounts for the failure to raise the *Batson-J.E.B.* challenge. The Court accepts that the *Batson-J.E.B.* claim may be raised as an ineffective assistance of counsel claim, which, however viewed, would, if successful, overcome the procedural default.

To establish ineffective assistance of counsel, Petitioners must show that counsels' performance was both deficient and prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As discussed above, for purposes of analysis, arguendo, prejudice will be presumed. *See Bell*, 236 F.3d at 165. The relevant inquiry, then, would be whether counsel acted in substandard fashion. The Court, of course, will decide this issue definitively after further briefing on the merits.

Even so, after preliminary review, the Court is unable to conclude, at this time, that Petitioners have made a prima facie case showing that the performance of their counsel, at trial or on appeal, fell below an objective standard of reasonableness. Petitioners ask the Court to rely on the affidavit of their trial counsel that counsel overlooked the *Batson-J.E.B.* challenge at trial. But the suggestion that a court is somehow bound by trial counsels' own assertion that they were ineffective is troubling at the very least, since it clearly raises the specter that all trial counsel will deliberately fail to raise a *Batson-J.E.B.* challenge at trial, then successfully raise it later on collateral review when they seek even more expansive discovery than they might have obtained at trial.

Again, on preliminary review, counsel's failure to raise the *Batson-J.E.B.* issue does not appear to have been unreasonable. *See, e.g., Keel v. French*, 162 F.3d 263, 272 (4th Cir. 1998) (denying ineffective assistance of counsel claim for failure to raise *Batson* claim at trial and on appeal, even if petitioner could have established a prima facie case at trial). The Government has cited several reasons in its affidavit, all supported by the record, why it chose to strike each challenged juror. Despite the Government's high percentage of strikes of female jurors, four women who would have been seated on the jury, making it more representative of the pool, were struck by Petitioners themselves. Trial and appellate counsel could therefore have plausibly

concluded that there were no gender or race-based reasons underlying the Government's strikes. Counsel could also have reasonably concluded that there would have been a proportionate jury pool had they themselves not chosen to strike certain of the women. In other words, because a prima facie case requires an "inference of discrimination," trial and appellate counsel, it appears, could have concluded that the percentage of the Government's strikes of women was insufficient to bestir them to raise the claim. As such, the failure to raise the issue would likely not give rise to an ineffective assistance of counsel claim. *See Smith v. Murray*, 477 U.S. 527 (1986) (stating that appellate counsel need not pursue a futile issue).

## VII.   Entitlement to Relief

The Court next considers whether, if the facts are further developed, Petitioners might yet demonstrate that they are entitled to relief. Although Petitioners have inundated the Court with statistics and juror-to-juror comparisons to support their discovery motion, the Court finds that these fall short of demonstrating good cause for discovery.

Petitioners cite the *Miller-El II* case in support of their request to gain access to additional facts. But the Court finds the case at bar markedly different from *Miller-El II*, having already considered *Miller-El II* while performing an analysis in *U.S. v Higgs* very similar to the analysis of very similar facts and conditions in the present case. As in *Higgs*, the "shuffling" of jurors and the asking of different questions of male and female jurors here did not occur in such a manner as to suggest that the prosecution treated female veniremembers any differently from male veniremen. 711 F. Supp. 2d at 505 (citing *Miller-El II*, 545 U.S. at 239-66).

Petitioners have provided some and now attempt to seek further evidence: (1) statistical evidence relating to the prosecutors' strikes; (2) juror-to juror comparisons; and (3) historical

evidence of discrimination (implying a systematic policy of discrimination). The Court addresses each of these proposals.

A.  Juror Strike Statistics

Petitioners' jury consisted of 11 men and 1 woman. The six alternate jurors were all men. There were no African-American women on the jury or among the alternates. The jury pool from which the final jury was selected consisted of 64 qualified veniremembers, 52 for the jury and an additional 12 for the alternate pool. Counsel for each side were given 20 peremptory strikes with respect to the pool of 52, and 3 additional strikes for the veniremembers in the alternate pool. In the event of duplicate strikes or a party not using all strikes, counsel were advised by the Court in advance of jury selection that the first 15 "clean names" would be seated, the first 12 as jurors, the next three as alternates.[2]

The first 52 jurors consisted of 29 men and 23 women. The Government exercised 19 of its 20 strikes to exclude 4 men and 15 women, leaving a jury pool of 25 men and 8 women, including one African-American woman and one Asian woman. The defendant struck 11 men (one who was also struck by the Government) and 9 women (2 of whom were also struck by the Government). The jurors were selected from the first 37 jurors (consisting of 17 females and 20 males). The alternate jury pool consisted of seven females (including two African-Americans) and five males. The Government struck two Caucasian females and one African-American female from the alternate pool, leaving an alternate pool of four females and five males. The Petitioners struck two Caucasian females and one Caucasian male from the alternate pool.

Petitioners represent that the Government used 82% of its exercised strikes (18 of 22) and 78% of its available strikes (18 of 23) against women, who made up 47% of the pool of 64

---

[2] This is the Court's usual practice in seating jurors. No objection was taken by either the Government or Petitioners to the Court's indication that it would follow this practice.

qualified jurors (30 of 64), and only 18% of its exercised strikes (4 of 22) and 17% of its available strikes (4 of 23) against men, who made up 53% of the pool of 64. This, they say, shows that the Government was four to five times more likely to strike a woman than a man. They also say that the Government used its strikes to remove 82% of the African-American women (9 of 11) from the qualified pool of 64, which was 17% African-American women.

The Government responds by pointing out that in the group of potential jurors, there were 4 females who would have been seated on the jury if Petitioners themselves had not struck them. This, the Government says, would have resulted in a jury of seven men (58.3%) and five women (41.6%), a ratio consistent with the composition of the pool.

The Court seeks to unpack these arguments.

It may be, under some circumstances, that statistics alone suffice to establish a prima facie case of discrimination. But even if this were so, Petitioners have not made a compelling statistical case here. The statistical evidence they proffer is undermined by the undeniable fact that the jury would have consisted of seven men (58.3%) and five women (41.6%) if the Petitioners had not struck the four females the Government left in the potential jury pool.

Petitioners, to be sure, point out that a defendant's strikes "are irrelevant to the determination of whether the prosecutor has engaged in discrimination." *Holloway v. Horn*, 355 F.3d 707, 729 (3d Cir. 2004). While this may be true, to the extent Petitioners are relying on the disproportionate make-up of the jury, unless Petitioners' own strikes are considered, the statistics they put forth paint a misleading picture. The concern in *Holloway* was that the trial court had disregarded the *Batson* claim primarily based on a consideration of the defense's strikes. Such is not the case here. The Court looks at the full picture of the jury selection to understand Petitioners' claims. *See Allen v. Lee*, 366 F.3d 319, 330 (4th Cir. 2004) ("Though statistics are

not utterly bereft of analytical value, they are, at best, manipulable and untrustworthy absent a holistic view of the circumstances to which they apply."); *United States v. Joe*, 928 F.2d at 102 ("A defendant must show facts sufficient to raise an inference of intent by the government to discriminate based on all of the relevant circumstances"). Because the Government did not strike all women, and in fact refrained from using its last strike, and because the jury pool would have been more representative of the ratio of women in the pool had Petitioners not struck certain women venire persons, the Court does not find Petitioners' use of statistics persuasive. They do not by themselves rise to the level of "specific allegations" justifying discovery in this case.

B.  Juror-to-Juror Comparisons

Petitioners also provide juror comparisons with respect to the jury strikes. At this juncture, at least, the Court does not find Petitioners' comparisons convincing. They suggest that reasons listed by the Government for striking female jurors were just as true for similar male jurors who were not stricken, e.g., purported ambivalence about the death penalty; purported endorsement of higher standards for imposition of death penalty, purported religious affiliations; relatives involved in criminal conduct, etc. But for each female juror stricken, Petitioners single out one reason given among a list of many given for the strike, then isolate a single similar reason given with respect to a male juror who was not struck. Considering the totality of the circumstances, the selectivity of Petitioners' juror-to-juror comparisons fails to persuade. Equally unpersuasive is the argument that the Government's reasons are "not supported by the record." While it may be true that many of the reasons for strikes stated by the Government are demeanor-based, those reasons, even if not reflected in the record, are considered legitimate, not necessarily pretextual as Petitioners argue. *See United States v. Barnette*, 644 F.3d 192, 214, 215 (4th Cir. 2011) (noting that *Batson* did not hold "that a demeanor-based explanation for a

peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor.") (citing *Thaler v. Haynes*, 559 U.S. 43, 49 (2010)). The Government was permitted to reconstruct its reasons for the strikes after the fact based on its notes and recollections. *Crittenden v. Ayers*, 624 F.3d 943, 957-58 (9th Cir. 2010). But again, the Government's reasons do not have to be persuasive, or even plausible; all that is required is that they be race-neutral. *United States v. Smith*, 357 F. App'x 555, 558 (4th Cir. 2009). The Court will, of course, make a more detailed review of the record when it addresses the merits. But for now, for purposes of Petitioners' quest for discovery, the Court does not find they have met their burden of showing "specific allegations" entitling them to relief.

## C.  History of Discrimination

Finally, Petitioners have suggested that the two female prosecutors in this case, and perhaps the entire U.S. Attorney's office in this District, have a "history" of striking female jurors from death penalty juries. They cite to the *Higgs* case, a death penalty case in which the same two female prosecutors participated and at which this member of the Court presided, but the Court has already decided the *Batson-J.E.B.* issue in *Higgs*, finding no impermissible use of strikes.  Without more, Petitioners suggest that they need the strike lists not only from *Higgs* but from all other capital cases from this District, in order to establish historical evidence, including those not tried by the prosecutors in the present case. This request - the Court cannot conclude otherwise - has every indicia of a fishing expedition.

## VIII.   Discovery

Petitioners suggest that they have established the first prong in justification of *Batson-J.E.B.* discovery, namely a prima facie case, a proposition which, as discussed above, the Court rejects.

To be sure, Petitioners correctly state that establishing a prima facie case for relief under *Batson-J.E.B.* is not an onerous task and does not require persuasive proof that discrimination occurred. *Johnson v. California*, 545 U.S. 162, 170 (2005) ("We did not intend the first step to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination."). A prima facie case is established if there is even a "suspicion" of discrimination. *Id.* at 170. But as discussed above, because Petitioners' are seeking to establish a suspicion of discrimination for a class not their own, they must show that other relevant facts and circumstances give rise to an inference of discrimination. *United States v. Joe*, 928 F.2d 99, 102 (4th Cir. 1991). The Court does not find, at this juncture, that they have done so.

As a matter of perspective, if all that was required to obtain discovery on collateral review in connection with a *Batson-J.E.B.* challenge was to proclaim that prosecutors used a disproportionate number of strikes against women, then citing one proffered reason for the questioned strikes among many given, then assert a "history" of discrimination on the part of the prosecutors based on one prior case, petitioners would gain full access to reams of documents, hardly in consonance with the principle that discovery is "extremely limited in federal habeas proceedings." *See Bracy*, 520 U.S. at 902-06; *see also Wiggins v. Boyette*, 3:05CV346-1-MU, 2008 WL 504099, at * 2 (W.D.N.C. Feb. 20, 2008) ("The mere fact that the prosecutors in Petitioner's case used a disproportionate number of peremptory strikes to remove black jurors is wholly insufficient to establish "good cause" to support his discovery requests. To hold otherwise would be to allow every federal habeas petitioner who can satisfy the first prong of the three-part Batson test to conduct broad discovery at the federal level.").

In view of the foregoing, the Court **DENIES** Petitioners' Joint Motion for Discovery

## IX.    Briefing on Merits

The Court has previously set a schedule that allows Petitioners to file a brief on the merits of the *Batson-J.E.B.* claim following determination of the present Joint Motion for Discovery. That schedule remains in place, although Petitioners and the Government should seriously consider whether further briefing is necessary, given the extensive briefs (and supplemental briefs) already submitted. Counsel should notify the Court within the next twenty days of their intentions in this regard.

## X.    Conclusion

For the foregoing reasons, Petitioners' Joint Motion for Discovery Regarding the Allegations of Impermissible Discrimination in Jury Selection Made in their Motions for Relief Under 28 U.S.C. § 2255 [Paper No. 453] is **DENIED**.

A separate order will **ISSUE.**

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 29, 2014