**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PJM-03-0457 |
| | * | |
| KENNETH LIGHTY, | * | CIVIL NO. PJM-12-3065 |
| | * | |
| Petitioner | * | |
| | * | |

**...oOo...**

**GOVERNMENT'S RESPONSE TO SUPPLEMENTAL
MOTION TO VACATE UNDER 28 U.S.C. § 2255**

The United States of America, by undersigned counsel, respectfully submits the following response in opposition to Petitioner's Supplemental Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 607). The government opposes the relief requested in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 3, 2002, Lighty and his co-defendants James Flood, III and Lorenzo Wilson forced Eric Larry Hayes, III, into their 1972 Lincoln at gunpoint, drove him to a dark street in Temple Hills, Maryland, and forced him to kneel outside the car, where they shot him multiple times at point blank range, killing him. Before abducting Hayes, Lighty and crew also brandished a weapon at Hayes' friend, Antione Forrest, causing him to flee. *See United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010).

On October 8, 2003, a Grand Jury in the District of Maryland returned a five-count indictment charging Lighty and his co-defendants with kidnapping resulting in the death of Eric Hayes, in violation of 18 U.S.C. § 1201(a) (Count One); conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c) (Count Two); and, three counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three, Four and Five). ECF No. 1. According

1

to the Indictment, the § 924(c) charges in Counts Three and Five were predicated on kidnapping resulting in death, as set forth in Count One, and conspiracy to commit kidnapping, as set forth in Count Two. *Id*. at 4, 6. The § 924(c) charge in Count Four was predicated on "the brandishing of a gun at the friend of Eric Larry Hayes II during their attempt to grab him during and in relation to the conspiracy to kidnap," as set forth in Count Two. *Id*. at 5.

On December 28, 2004, the Government filed a notice of intent to seek a death sentence for Lighty only. The Government consented to a severance of Wilson's trial, and Flood and Lighty subsequently moved to sever their trials. JA 64.[1] The district court denied those motions, JA 187-190, and later also denied Lighty's motion to reconsider that decision. JA 564. Flood and Lighty's joint trial commenced on September 6, 2005 and lasted until October 21, 2005, when the jury returned verdicts of guilty as to all five counts for both Lighty and Flood. JA 27.

On November 10, 2005, the jury returned a special verdict form as to Lighty's sentence. JA 3430-42. In that special verdict, the jury found four statutory proportionality factors as to Lighty:

**1) Intentionally Killed the Victim.** The defendant intentionally killed the victim, Eric Larry Hayes, II.

YES   X
NO

**2) Intentionally Inflicted Serious Bodily Injury that Resulted in the Death of the Victim.** The defendant intentionally inflicted serious bodily injury that resulted in the death the victim, Eric Larry Hayes, II.

YES   X
NO

---

[1]    Citations to "JA" are to the Joint Appendix filed in connection with the direct appeal of this case, copies of which are available to the Court upon request.

**3) Intentional Acts to Take Life or Use Lethal Force.** The defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Eric Larry Hayes, II, died as a direct result of the act.

YES   X
NO

**4) Intentional Acts of Violence Creating a Grave Risk of Death.** The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Eric Larry Hayes, II, died as a direct result of the act.

YES   X
NO

JA 3432-33.

The jury also found five aggravating factors:

**1) Death During the Commission of Another Crime.** We, the jury, unanimously find proven beyond a reasonable doubt that the death or injuries resulting in death occurred during the commission of, attempted commission or, or during the immediate flight from the commission of an offense under 18 U.S.C. § 1201(a)(2)(kidnapping).

YES   X
NO

**2) Victim Impact Evidence.** We, the jury, unanimously find proven beyond a reasonable doubt that the defendant caused injury, harm, and loss to Eric Hayes and his family because of the

3

effect of the offense on Eric Hayes, his personal characteristics as an individual human being, and the impact of the death upon Eric Hayes and his family.

YES   X

NO

**3) Lack of Remorse.**  We, the jury, unanimously find proven beyond a reasonable doubt that the defendant has demonstrated lack of remorse for the capital offense charged in Count One, as indicated by defendant's statements made following the commission of the capital offense charged in Count One, and by the defendant's actions during the course of and following the commission of the capital offense charged in Count One.

YES   X

NO

**4) Commission of Other Serious Acts of Violence, including Murder.**  We, the jury, unanimously find proven beyond a reasonable doubt that apart from the offenses charged in the Indictment, the defendant engaged in other acts of violence.

YES   X

NO

**5) Commission of Capital Offense While the Defendant Was Subject to Conditions Pertaining to Other Charges and Adjudications.**  We, the jury, unanimously find proven beyond a reasonable doubt that at the time of the commission of the capital offense charged in Count One, the defendant was under court ordered conditions.

YES   X

NO

JA 3432-33.  The jury also found five mitigating factors, including: 1) that another defendant or defendants who were equally culpable in the crime would not be punished by death; 2) other factors in the defendant's background, record, character, or circumstances of the offense; 3) that all life

4

has value; 4) the effect of the sentence on Nancy Westfield, the defendant's grandmother; and 5) poor defense. *See* JA 3437-38.

The jury determined that the aggravating factors sufficiently outweighed the mitigating factors, and unanimously voted to recommend that Lighty be sentenced to death. JA 3440-3441.

On February 28, 2006, this Court sentenced Lighty to death as to Count One, kidnapping resulting in death; life imprisonment as to Count Two, conspiracy to commit kidnapping, to run concurrently; five years as to Count Three, use of a firearm to abduct Eric Larry Hayes, to run consecutively; twenty-five years as to Count Four, brandishing a firearm in attempted abduction of Antione Forrest, to run consecutively; and twenty-five years as to Count Five, use of a firearm to shoot Eric Larry Hayes, to run consecutively. JA 3481.

On March 10, 2006, this Court issued a Judgment and Order stating:

> Pursuant to the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591-3595 and the Special Findings of the jury, returned on the 10th day of November, 2005, and the jury's unanimous vote recommending that the defendant, KENNETH JAMAL LIGHTY, shall be sentenced to death on Count 1, it is the Judgment of the Court that the defendant, KENNETH JAMAL LIGHTY, is sentenced to death on Count 1 of the Indictment.

ECF No. 248.

The Fourth Circuit affirmed, by published decision, both Lighty's judgment and the Court's denial of a motion for new trial based upon newly discovered evidence. *Lighty*, 616 F.3d 321 (2010). On October 17, 2011, the Supreme Court denied Lighty's petition for certiorari. *Lighty v. United States*, 132 S.Ct. 451 (2011).

On June 24, 2016, Lighty filed a Motion to Supplement[2] his Amended Motion for Relief under 28 U.S.C. § 2255, raising a claim pursuant to the Supreme Court's ruling in *Johnson v.*

---

[2]    Petitioner had previously filed an Amended Motion to Vacate, Set Aside, or Correct Sentence and for New Trial pursuant to 28 U.S.C. § 2255. ECF No. 451.

*United States*, 135 S. Ct. 2551 (2015).[3]  ECF No. 530.  The motion argued that kidnapping was not a crime of violence, and therefore Lighty's § 924(c) convictions should be vacated.  *Id*.

On August 23, 2019, Lighty filed a Supplemental Motion for Relief under 28 U.S.C. § 2255, providing additional authority for his *Johnson*-related claim, including *United States v. Davis*, 139 S.Ct. 2319 (2019), and *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019).[4]  Lighty argues that all three of his § 924(c) convictions should be vacated, and that his sentences as to all other counts should be vacated.

While the government concedes that Count Four must be vacated, the extent of relief sought is inappropriate here.  The § 924(c) count charged in Count Four was predicated solely on conspiracy to commit kidnapping, which no longer qualifies as a § 924(c) crime of violence.  However, the § 924(c) counts charged in Counts Three and Five were based on both kidnapping conspiracy and kidnapping resulting in death.  Kidnapping resulting in death, which mandates a minimum sentence of life imprisonment, is an aggravated form of kidnapping akin to murder and remains a crime of violence.  Thus, those § 924(c) convictions were independently supported by a crime of violence unaffected by *Davis*.

Moreover, because the jury's deliberations as to Lighty's sentence were not informed by the gun charge in Count Four, there is no need for a full resentencing as to the non-vacated counts.

---

[3]    The Supreme Court ruled in *Johnson* that the residual clause of the Armed Career Criminal Act definition for "violent felony," at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2558.

[4]    On June 24, 2019, the Supreme Court ruled in Davis that the residual clause contained in the definition of "crime of violence," at 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague. Davis, 139 S.Ct. at 2336.  In *Walker*, the Fourth Circuit held that kidnapping in violation of 18 U.S.C. § 1201(c) "does not categorically qualify as a crime of violence under the force clause." *Walker*, 934 F.3d at 379.

## ANALYSIS

I.    **Lighty's § 924 convictions in Counts Three and Five remain valid following *Davis* because they also rest on the kidnapping resulting in death charged in Count One.**

The government submits that Lighty is entitled to a vacatur of his conviction for using and carrying a firearm during and in relation to a crime of violence under § 924(c) in Count Four following the Supreme Court's decision in *Davis*, but opposes any further relief.

Section 924(c) prohibits using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines a crime of violence as "an offense that is a felony" and "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Subsection (A) of § 924(c)(3) is referred to as the "force clause" or "elements clause," while subsection (B) is commonly referred to as the "residual clause." As noted above, the Supreme Court held in *Davis* that the residual clause portion of the definition of "crime of violence" – subsection (B) – is unconstitutionally vague. *Davis*, 139 S.Ct. at 2336.

Subsequently, the Fourth Circuit ruled that kidnapping "does not categorically qualify as a crime of violence under the force clause" because it can be committed through "inveiglement." *Walker*, 934 F.3d at 378-79. Defining "inveigle" as "to lure or entice through deceit or insincerity," the Court found that "kidnappings [can be] accomplished through physical, forcible means and also by nonphysical, nonforcible means." *Id.* Accordingly, the government concedes that Lighty's § 924(c) conviction at Count Four, which was based solely on conspiracy to commit kidnapping, as set forth in Count Two, should be vacated.

The § 924(c) convictions at Counts Three[5] and Five[6] should remain undisturbed, however, as they were predicated on *both* kidnapping conspiracy (Count Two) *and* kidnapping resulting in death (Count One) – an aggravated form of kidnapping that is akin to murder.  The Indictment alleged as to Count One:

> On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, KENNTH JAMAL LIGHTY [et al.] did knowingly, willfully, and unlawfully seize, confine, kidnap, abduct, and carry away Eric Larry Hayes II and hold him for a reason which was of benefit to the defendants, and while so holding him, did transport Eric Larry Hayes II in interstate commerce, to wit: from the District of Columbia to the State of Maryland, and **said kidnapping resulted in the death of Eric Larry Hayes II**.

*Id*. at 1.

---

[5]    Count Three states:

> On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, KENNTH JAMAL LIGHTY [et al.] did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, to wit: the forcible placing of Eric Larry Hayes II at gunpoint into the vehicle during and in relation to the initial seizure of Eric Larry Hayes II in the District of Columbia, in violation of Title 18, United States Code, Section 1201(a), as charged in Count One of this Indictment, and the conspiracy to kidnap, in violation of Title 18, United States Code, Section 1201(c), as charged in Count Two, which are incorporated by reference herein.

ECF No. 1 at 4.

[6]    Count Five states:

> On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, KENNTH JAMAL LIGHTY [et al.] did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, to wit: the shooting of Eric Larry Hayes II during and in relation to the kidnapping, in violation of Title 18, United States Code, Section 1201(a), as charged in Count One of this Indictment, and the conspiracy to kidnap, in violation of Title 18, United States Code, Section 1201(c), as charged in Count Two, which are incorporated by reference herein.

ECF No. 1 at 6.

Section 1201(a) provides that the penalty for one who commits kidnapping, "if the death of any person results, shall be punished by death or life imprisonment." 18 U.S.C. § 1201(a). Because this provision carries an enhanced penalty (death or life imprisonment), it is properly understood as an aggravated offense that is divisible from typical kidnapping. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *see also Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Moreover, Congress's use of the term "results" requires a causal connection between the kidnapping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See*, *e.g*., *Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a Section 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest). Establishing that connection will virtually always require proof that intentional or reckless force capable of causing physical pain or injury was used during the course of the commission of the offense.

Kidnapping resulting in death is generally charged where the conduct is particularly egregious. For example, in *United States v. Higgs*, the defendants were charged with this aggravated form of kidnapping when they drove three women to the Patuxent National Wildlife Refuge after a date resulted in a verbal altercation, and ruthlessly shot all three to death. *United States v. Higgs*, 353 F.3d 281, 290 (4th Cir. 2003). In another case, the defendant strangled a

9

pregnant woman to death and cut her near-term fetus from her body, in order to kidnap the baby. *United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011). *See also United States v. McGowan*, 768 F. App'x 873, 874 (10th Cir. 2019) (defendant kidnapped his girlfriend's five-year-old child and, after a lengthy police chase, crashed his car into a construction barricade, where authorities found that he had already shot and killed the child).

The Fourth Circuit's decision in *In re Irby,* that retaliatory second degree murder is a crime of violence under the force clause, requires a finding that kidnapping resulting in death remains a crime of violence after *Davis*. *In re Irby*, 858 F.3d 231 (4th Cir. 2017) (retaliatory murder, which "makes it an offense to intentionally kill another person in retaliation," is a crime of violence because "one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another"). *See also United States v. Battle*, 927 F.3d 160, 165 (4th Cir. 2019) (assault with intent to murder is a violent felony under the Armed Career Criminal Act). Indeed, this Court has ruled that murder pursuant to 18 U.S.C. § 1111 is a crime of violence under the § 924(c) force clause. *United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 554 (D. Md. 2016) ("finding that murder is not a crime of violence under the force clause of § 924(c) strains common sense.").

Here, the jury expressly found that Lighty, *inter alia*, "intentionally killed the victim, Eric Larry Hayes, II;" "intentionally inflicted serious bodily injury that resulted in the death the victim, Eric Larry Hayes, II;" and "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, […] and the victim, Eric Larry Hayes, II, died as a direct result of the act." JA 3432.

Thus, Count One remains a crime of violence because capital kidnapping resulting in death, coupled with the jury's findings of intentional killing and use of force, eliminates any concern that

10

this crime's commission falls under the § 924(c) residual clause definition as to Counts Three and Five.

**II.    The appropriate remedy in this case is mere vacatur of Count Four as the remainder of Lighty's sentence is unaffected by *Davis*.**

Any relief granted as to Count Four warrants no additional relief on Lighty's other counts of conviction. Lighty asserts that the entirety of his sentence must be vacated because "there is a possibility that" his now-invalid § 924(c) conviction "influenced at least one juror to recommend death." ECF No. 607 at 10-14.

This claim is not supported by the record, however. Viewing the trial proceedings along with the penalty phase jury instructions, the jury's special verdict, and this Court's Judgment and Order sentencing Lighty to death, it is evident that the conduct charged in Count Four had little impact on the jury's – and this Court's – decision as to Count One.

Indeed, the focus of the trial and penalty phase was overwhelmingly trained on the murder of Eric Hayes. The Fourth Circuit found on direct appeal that "[t]he evidence in this case demonstrates, overwhelmingly, that Lighty participated in the kidnapping and was the individual that shot Hayes." *Lighty*, 616 F.3d at 356. Because "the evidence of Lighty's guilt during the guilt phase of the trial was overwhelming," *id*. at 362, any evidence concerning the sole now-invalidated count (Count Four) does not outweigh the thorough consideration given to the egregious conduct charged in Count One, or the other remaining counts of conviction.

During the penalty phase, this Court thoroughly instructed the jury on sentencing as to Count One.

The Court explained that, in order to impose the death penalty, the jurors must have been

11

"unanimously persuaded beyond a reasonable doubt that the Government has proven any of the statutory proportionality factors." JA 3278. The Court further explained that the jury "must find at least one of the statutory proportionality factors alleged by the Government in order to further consider imposing the death penalty on the defendant." *Id.* Those factors included that Lighty: 1) intentionally killed the victim; 2) intentionally inflicted serious bodily injury that resulted in the death of the victim; 3) intentional acts to take life or to use lethal force; and 4) intentional acts of violence creating a grave risk of death. JA 3278-79.

The Court instructed the jury at length on how to determine whether any of these factors existed. JA 3280 ("I'm going to define for you now with more precision each of the statutory proportionality factors."); JA 3280-84. The jury, required to find only one proportionality factor, unanimously found all four beyond a reasonable doubt. JA 3432-33.

If the jury found all four proportionality factors, they were directed to consider whether they were "unanimously persuaded beyond a reasonable doubt that the government has proven any of the statutory aggravating factors." JA 3284. The sole statutory aggravating factor alleged was that Lighty killed Eric Hayes during the commission of another crime. *Id.* The Court explained that the jury must find that "[t]he death and injuries resulting in death occurred during the commission of or the attempted commission of and during the immediate flight from the commission of an offense under 18 United States Code Section 1201(a)(2), which is kidnapping." *Id.* at 3284-85.

The Court further instructed that the jury should consider whether they were "unanimously persuaded beyond a reasonable doubt that the Government has proven any of the specified nonstatutory aggravating factors." JA 3287. These factors included: 1) "the impact of [Eric Hayes'] death on his family; 2) Lighty's "lack of remorse;" 3) "the commission of other serious

12

acts of violence, including murder;" and 4) "commission of the capital offense while the defendant was subject to conditions pertaining to other charges and adjudications." *Id*. at 3288-89. The Court also explained that the jury was forbidden from considering "any other factors in aggravation which have not been alleged by the Government." *Id*. at 3288.

The Court then explained that the jury should determine whether mitigating factors weighed against a death sentence. *Id*. at 3293-97. The Court advised that the jury could find the existence of mitigating factors by a preponderance of evidence. JA 3295 ("In short, your discretion in considering mitigating factors is much broader that your discretion in considering aggravating factors."). The Court explained two statutory mitigating factors (equally culpable defendants would not be sentenced to death and other factors in the defendant's background, record, or character, or any other circumstance of the offense that mitigates against the imposition of the death sentence) and also stated that defense counsel would present additional mitigating factors during closing argument. *Id*. at 3295-96.

Throughout the penalty phase jury instructions, the Court focused on the conduct in Count One – the only capital offense in this case. *See generally* JA 3267-3302. While the Court's instructions included oblique references to the evidence presented at trial (JA 3267-68), at no point did the Court discuss the attempted kidnapping of Antoine Forrest or the brandishing of the firearm during that attempt.[7] *See id*. This case was about the murder of Eric Hayes. Indeed, the Court explained that "[a]t this part of the trial, the evidence consists of all the evidence that was received during the first part of the trial to the extent that it's relevant to your inquiry regarding the existence of any proportionality factor." JA 3268. As discussed above, the proportionality factors all

---

[7]     As discussed above, before abducting and killing Eric Hayes, Lighty also brandished a weapon at Hayes' friend, Antione Forrest, causing him to flee. *Lighty*, 616 F.3d at 338.

concerned the murder of Eric Hayes.

In any event, the kidnapping conspiracy charge in Count Two was not invalidated, so all evidence presented as to that count was properly considered.  Any overlapping evidence as to Count Four simply had no substantial effect on the jury's sentencing deliberations.

Lighty relies on *United States v. Tucker*, 404 U.S. 443 (1972), to argue that the Court directed the jury to consider "materially inaccurate" information of Lighty's § 924(c) convictions. This argument must fail.  First, in *Tucker*, the district court "gave explicit attention" to three previous felony convictions,[8] then sentenced Tucker to the maximum sentence available partly because of his criminal history.  *Tucker*, 404 U.S. at 444.  Here, as discussed above, the conduct in Count Four was not explicitly considered during the penalty phase.  The later invalidation by *Davis* simply does not amount to the "misinformation of constitutional magnitude" contemplated by *Tucker*.

Moreover, Lighty cannot satisfy his burden to show that any error as to Count Four "had substantial and injurious effect or influence" on the other counts.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted); *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013) (applying Brecht's "substantial and injurious effect" test to § 2255 cases).  First, the Court ensured that the jury rendered its capital sentencing verdict fairly and thoroughly.  Juries are presumed to follow instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and there is every reason to conclude the jury did so here.

This Court required separate findings as to each count at trial.  As the Fourth Circuit found

---

[8]     The prior convictions resulted from prosecutions in 1938 and 1946, without the help of a lawyer, and were subsequently found in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963).

on direct appeal:

> The district court repeatedly instructed the jury that it was required to assess the evidence against each defendant separately, and the government, through the relevant evidence it introduced at trial (summarized in Part IIB1), overwhelmingly established each defendant's guilt on each count beyond a reasonable doubt.

*Lighty*, 616 F.3d at 349-50.  And, as discussed above, the Court instructed the jury only as to Count One, the capital offense during the penalty phase.  Given this clarity, Lighty cannot overcome the presumption that the jury followed instructions.

Moreover, Lighty cannot show that the changing legal landscape regarding § 924(c) undermines the jury's factual findings regarding the individual aggravators or the death sentence imposed for the capital count.  Section 924(c) may suffer from vagueness, but that in no way absolves Lighty of arming himself with a firearm and intentionally shooting his victim to death.  He cannot establish that the jury's finding on Count Four had a "substantial and injurious effect or influence" in determining its findings on the other counts.  *See Brecht*, 507 U.S. 637 (internal quotation marks omitted).

Therefore, the government requests that this Court exercise its authority under 28 U.S.C. § 2255 and vacate Lighty's conviction for Count Four and leave the remainder of his sentence undisturbed.

> Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

> [. . .]

15

> If the court finds that the judgment was entered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, *the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate*.

28 U.S.C. § 2255 (emphasis added).

In the event of vacatur of a previously imposed judgment or conviction, it is well-established, based upon the above-emphasized language of § 2255, that the district court has "broad and flexible" authority "to fashion an appropriate remedy." *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997); *see also United States v. Garcia,* 956 F.2d 41, 45 (4th Cir.1992). As the Fourth Circuit explained in *United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007), "the end result of a successful § 2255 proceeding must be the vacatur of the prisoner's [unlawful sentence or erroneous conviction(s)] and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) *or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence*." *Id*. at 661.

Under longstanding Fourth Circuit precedent, this Court has discretion to conduct a resentencing in order to award relief pursuant to 2255. *Hadden*, 475 F.3d at 669; *Hillary*, 106 F.3d at 1170. However, the "text of § 2255 clearly affords the district courts the authority to 'correct' a prisoner's unlawful sentence without conducting a formal resentencing hearing." *Hadden*, 475 F.3d at 669. Indeed, this Court is not required to conduct a resentencing in resolving every § 2255 petition. *Hadden*, 475 F.3d at 668.

Here, Lighty was charged with and convicted of five criminal counts including the capital crime of kidnapping resulting in death, kidnapping conspiracy, using a firearm to abduct Eric Hayes, brandishing a firearm in the attempted abduction of Antoine Forrest, and using a firearm to kill Eric Hayes. The fact that one of these counts must now be vacated does not require the

16

jury's verdict to be discarded. This Court should simply vacate Count Four and leave the remainder of the sentence undisturbed.

The holistic approach explained in *United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017) ("the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent") need not be employed here, because Lighty's sentence on Count One is independent of, and unaffected by, his sentence as to Count Four.

Accordingly, the government requests that this Court vacate Petitioner's Count Four conviction in light of *Davis* and leave the remainder of the judgment intact, pursuant to the authority provided under 28 U.S.C. § 2255. No resentencing hearing is necessary to accomplish this result.

WHEREFORE, the Government asks that this Court vacate Lighty's conviction at Count Four, and deny any additional relief with prejudice.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:   _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney

_____/s/_____
David I. Salem
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 10, 2019, a copy of the foregoing Response was delivered via ECF to Seth Rosenthal, Esq., Julie Brain, Esq., and C. Justin Brown, Esq., counsel for the Petitioner.

By: _____/s/_____
Ellen E. Nazmy