IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. **03-457-PJM** |
| | * | Civil No. **12-3065-PJM** |
| KENNETH JAMAL LIGHTY, | * | |
| | * | |
| *Defendant.* | * | |

## MEMORANDUM OPINION

Kenneth Jamal Lighty ("Lighty") has filed an Amended Motion to Vacate, Set Aside, or Correct Sentence and for a New Trial ("Motion to Vacate"), asking the Court to vacate his convictions pursuant to 18 U.S.C. § 924(c) and his sentence of death. ECF Nos. 451, 530. For the reasons that follow, the Court **GRANTS** Lighty's Motion to Vacate.

## I.     BACKGROUND

On January 3, 2002, Lighty, along with co-defendants Lorenzo Wilson and James Flood, abducted Eric Hayes from Washington, D.C. and transported him to Temple Hills, Maryland, where they executed him. Indic't. Nearly four weeks later, on January 30, 2002, Lighty acted as the driver in a drive-by shooting that took place on Afton Street in Temple Hills, Maryland and that resulted in the death of Antoine Newbill (the "Afton Street Shooting"). *United States v. Lighty*, 616 F.3d 321, 341 (4th Cir. 2010). The next day police were conducting a separate operation on East Capitol Street in Washington, during which an officer approached a car in which Lighty was a passenger. The officer observed Lighty placing a .380 caliber handgun in his pants and arrested him. *Id.* at 342. Shell casings from the handgun seized from Lighty appeared to show characteristics consistent with evidence found at Afton Street.

On October 8, 2003, Lighty was charged in this Court in a five-count indictment with

kidnapping resulting in the death of Hayes, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), as

well as conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c) (Count 2), and three counts of

use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 3, 4, 5).

Indic't. On October 21, 2005, a jury convicted Lighty on all five counts. ECF No. 249 at 1.

On November 10, 2005, the same jury unanimously recommended that Lighty receive the

death penalty. *Lighty*, 616 F.3d at 347. Accordingly, on February 28, 2006, the Court sentenced

him to death on Count 1, life imprisonment on Count 2, and consecutive sentences totaling fifty-

five years imprisonment on Counts 3 through 5. ECF No. 249. Lighty filed a notice of appeal to

the Fourth Circuit on March 14, 2006, which affirmed his convictions and sentences on August

11, 2010. *Lighty*, 616 F.3d at 380.

On September 8, 2010, the Fourth Circuit denied Lighty's requests for a rehearing and for

a rehearing *en banc*. ECF Nos. 389, 390. On October 17, 2011, the U.S. Supreme Court denied

Lighty's petition for a writ of certiorari. *Lighty v. United States*, 132 S. Ct. 451 (2011).

On October 16, 2012, Lighty commenced filing a series of pleadings yet to be ruled upon

by the Court: a Motion to Vacate, Set Aside, or Correct Sentence and for New Trial, pursuant to

28 U.S.C. § 2255 (ECF No. 434); on December 20, 2012, an Amendment to that Motion (ECF

No. 451); and between 2016 and 2021, three supplemental briefs based on substantive changes in

Supreme Court precedent.[1] The parties completed briefing on January 19, 2023, at which point

the Court took Lighty's Motion under advisement.

---

[1] Lighty filed his first supplement (ECF No. 530) in 2016 following the Supreme Court's
decision in *Johnson v. United States*, 576 U.S. 591 (2015), which invalidated the residual clause
of 18 U.S.C. § 924(e)(2)(B)(ii). He filed his second supplement (ECF No. 608) in 2019
following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which
voided the residual clause of 18 U.S.C. § 924(c)(3)(A). He filed his third supplement (ECF No.

To summarize the multitudinous briefs in this case: Lighty and the Government agree that his convictions under 18 U.S.C. § 924(c) (Counts 3 through 5) must be vacated because they are no longer predicated on a "crime of violence." They disagree, however, as to whether resentencing is warranted. Lighty argues that his death sentence must be vacated because it was necessarily informed, at least in part, by his now-unconstitutional § 924(c) convictions. The Government counters that Lighty is not entitled to resentencing because the § 924(c) convictions "had little impact on the jury's – and this Court's – decision as to Count One." ECF No. 631 at 11. As the Court now explains, Lighty's convictions under § 924(c) will be vacated and he will be resentenced on the remaining counts.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255, an individual in federal custody may challenge the legality of a sentence imposed by a district court on the following grounds: (1) that the sentence was imposed in violation of the U.S. Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The petitioner, here Lighty, bears the burden of establishing his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

## III.   DISCUSSION

The parties agree that Lighty's convictions under § 924(c) must be vacated because the charges on which they are predicated (conspiracy to commit kidnapping and kidnapping resulting in death) are no longer "crimes of violence." *E.g.*, *Johnson v. United States*, 576 U.S. 591 (2015);

---

649) in 2021 following the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), which established that a "crime of violence" requires intentional conduct.

*United States v. Davis*, 139 S. Ct. 2319 (2019); *Borden v. United States*, 141 S. Ct. 1817 (2021). But they disagree over how the Court should handle the vacated convictions.[2] The Government urges the Court to simply set aside the three § 924(c) convictions and leave the death penalty untouched. Lighty takes the position that the jury's probable consideration of his now-void § 924(c) convictions undermines the reliability of his death sentence such that he is entitled to resentencing on Counts 1 and 2.[3] The Court finds that Lighty has the better part of the argument.

The decision to exercise the power of the State to execute a defendant is unlike any other choice that citizens and public officials are called upon to make. *Mills v. Maryland*, 486 U.S. 367, 383 (1988). For this reason, a "high requirement of reliability" is obligatory when determining whether death is an appropriate penalty in a particular case. *Id.* at 383-84. *See also Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (noting the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a "special need for reliability" in determining whether death is warranted in a capital case); *Deck v. Missouri*, 544 U.S. 622, 632 (2005) (stressing the "acute need" for reliable decision making when the death penalty is at issue); *Monge v. California*, 524 U.S. 721, 732 (1998) (explaining the importance of reliability in capital sentencing proceedings "because the death penalty is unique 'in both its severity and its finality'"); *Lockett v. Ohio*, 438

---

[2] Pursuant to 28 U.S.C. § 2255, the Court has discretion over whether to simply vacate the void convictions or to order a resentencing. *United States v. Hadden*, 475 F.3d 652, 661, 667 (4th Cir. 2007).

[3] The Government makes a threshold argument that the Court has no authority to vacate Lighty's death sentence because it is bound by 18 U.S.C. § 3594 to preserve the jury verdict. The Court believes this contention "does not comport with reason, due process, or the traditional powers of the federal courts." *United States v. Runyon*, 652 F. Supp. 2d 716, 719 (E.D. Va. 2009). Certainly, the Court was statutorily obligated to adopt the jury's decision to impose the death penalty at the initial sentencing phase. 18 U.S.C. § 3594. But § 3594 does not speak to postconviction proceedings. *See* 28 U.S.C. § 2266(a) (referencing situations where "a person under sentence of death" would file a § 2255 motion). The Court is not only empowered, but is required, to vacate an improper verdict, especially where the question is literally one of life or death. 28 U.S.C. § 2255(b).

U.S. 586, 604, (1978) (stating that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). Even a "possibility" that the jury conducted its sentencing task improperly "certainly is great enough to require resentencing." *Mills*, 486 U.S. at 384.

The Supreme Court has long recognized that a death sentence based, even in part, on a conviction that is later vacated violates the Eighth Amendment. *Johnson*, 486 U.S. at 578-79 (explaining that such sentences are problematic from the mere fact that the jury was even "*allowed* to consider evidence . . . revealed to be materially inaccurate") (emphasis added); *Townsend v. Burke*, 334 U.S. 736 (1948) (noting that sentencing on the basis of "materially untrue" assumptions about a defendant's criminal record "is inconsistent with due process of law"). Consequently, resentencing is necessary when there is even a *possibility* that at least one capital juror considered an improper conviction during sentencing for other valid counts. *See United States v. Foutz*, 865 F.2d 617, 620-21 (1989) (explaining that a sentencer "may not, of course, consider information which is simply inaccurate, or which improperly implicates a defendant's constitutional rights"). *United States v. Tucker*, 404 U.S. 443, 592 (1972) (affirming resentencing for prisoner whose initial sentence was partially based on two subsequently vacated convictions); *James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) holding that resentencing was required where it appeared possible that the jury "might have relied in part on an unconstitutional conviction"); *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999) (ordering resentencing because there was no way to determine whether the jury had been influenced to impose a death sentence by a vacated third conviction); *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (resentencing required unless the record conclusively shows that a sentence "was not affected" by a vacated conviction).

In Lighty's case, the Court finds that the potential effect of the three improper convictions on the jury's recommendation of death compels a new sentencing hearing for Count One. Quite clearly, the jury that deliberated and found Lighty guilty of three invalid convictions was the same jury that decided his ultimate death sentence. Moreover, the Court instructed the jury in the guilt phase of the trial (1) that it should base its sentence on *all* evidence received in the guilt phase of the trial, including the distinct acts that comprised the § 924(c) convictions; and (2) that kidnapping was a crime of violence, a designation later ruled unconstitutional by the Supreme Court. ECF No. 530 ¶ 41–42. Thus, although the Court may have focused a major part of its instructions on Count One during the guilt and sentencing phases, as the Government argues, it cannot rule out the *possibility* that the jury improperly considered the § 924(c) convictions. In sum, the record simply does not meet the "high requirement of reliability" required in death penalty cases. *Mills*, 486 U.S. at 383.[4]

The Court's task when fashioning § 2255 relief is to place the defendant "in exactly the same position he would have been had there been no error in the first instance." *United States v Louthian*, 771 Fed. App'x 208, 209 (4th Cir. 2019) (quoting *United States v. Hadden*, 475 F.3d 652, 665 (4th Cir. 2007)). Given the special concerns about reliability in capital cases, the only reasonable way to put Lighty "in exactly the same position" he would have been absent the § 924(c) convictions would be to resentence him on the remaining counts.

---

[4] Separately, the Government cites to 18 U.S.C. § 3595(c)(2) to argue that Lighty has not proven any of the factors that would warrant remand of a death sentence by a court of appeals. ECF No. 671 at 12. But the Government does not explain, and the Court does not see, how those factors, which guide appellate review of a death sentence during the sentencing phase, should also apply to postconviction proceedings.

## IV.     CONCLUSION

For the foregoing reasons, Lighty's "Motion to Vacate" (ECF Nos. 451, 530) is

**GRANTED**.  The Court will **RESENTENCE** him on the remaining counts of conviction

(Counts 1 and 2).

Chambers will contact counsel to schedule a resentencing hearing on a mutually

convenient date.


A separate Order will **ISSUE.**


April /3, 2023

                                                          **PETER J. MESSITTE**
                                      **UNITED STATES DISTRICT JUDGE**